AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA LaBar) — USAO CW No. 22-094

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br>JASON BROWN<br><br><br>*Defendant(s)* | Case No. 22-mj-1823 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **March 17 to November 3, 2022** in the county of **Philadelphia** in the **Eastern** District of **Pennsylvania**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United states Code, Sections 922(a)(1)(A) and 2 | Engaging in the business of dealing in and manufacturing firearms without a license, aiding and abetting. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

/s Ryan Wills
*Complainant's signature*

ATF Special Agent Ryan Wills
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/15/2022

/s David R. Strawbridge
*Judge's signature*

City and state: Philadelphia, Pennsylvania

U.S. Magistrate Judge David R. Stratwbridge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# CRIMINAL COMPLAINT AND ARREST WARRANT

I, Ryan Wills, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I, Ryan Wills, am a Special Agent for the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since July 2020. Prior to being employed by ATF, I worked as a Federal Police Officer with the Supreme Court of the United States Police for over four years. I am currently assigned to ATF Philadelphia Group VII, which is a Firearms Enforcement Group, whose primary responsibilities include investigating violent crime through the interdiction of firearms being possessed or used by violent criminals in Philadelphia, Pennsylvania. I have successfully completed the Federal Law Enforcement Training Center's Uniformed Police Training Program and Criminal Investigator Training Program as well as ATF's Special Agent Basic Training. As a result of my training and experience, and the experience of other agents, I am familiar with evidence in a criminal complaint affidavit to establish probable cause.

2.  The information contained in this affidavit is known to me personally or has been relayed to me by other law enforcement officers or is based upon my review of law enforcement reports and other documents. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause to secure authorization to arrest Jason BROWN, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause.

## PURPOSE OF AFFIDAVIT

3.      This affidavit is provided in support of a Criminal Complaint and Arrest Warrant charging Jason BROWN with violating Title 18 United States Code Sections 922(a)(1)(a) and 2 (engaging in the business of dealing in and manufacturing firearms without a license, aiding and abetting.)

## FACTS ESTABLISHING PROBABLE CAUSE

### Background on "Privately Made Firearms"

4.      The term "Privately Made Firearms" ("PMFs") refers to firearms that have been made from "unfinished" firearm frames/receivers by individuals who are not licensed to manufacture firearms and that are absent manufacture's marks of identification. The term "ghost guns" is also colloquially used to refer to these types of firearms. These PMFs are manufactured by unlicensed individuals from component parts that are commonly sold online by online retailers, and that can be shipped by the retailer to a purchaser without the requirement to conduct a background check on the purchaser or to complete an ATF Form 4473 (Firearms Transaction Record). In my training and experience, I know that such PMFs can be assembled with relative ease by individuals with little or no manufacturing or gunsmithing expertise using readily-available tools. I know that numerous websites selling the firearms components used to make PMFs also provide instructions on how a PMF is assembled from those components, and provide additional internet links for supplementary milling and assembly instructions. Further, I know that numerous instructional videos containing detailed step-by-step instructions regarding how to assemble multiple models of PMFs are readily available on YouTube and other online sources. Based on my training and experience, I know PMFs have become an increasingly

common weapon of choice for many criminals, are often manufactured by or supplied to criminal groups, and have been used in shootings and other crimes throughout the region.

5. I also know that unlicensed individuals may not engage in the business of manufacturing PMFs for sale to others, nor may unlicensed individuals engage in dealing in such firearms. Title 18, United States Code, Section 922(a)(1)(A) makes it unlawful for anyone other than a "licensed importer, manufacturer, or dealer" to engage in the business of "manufacturing, or dealing in firearms." Section 921 of title 18 defines a firearm for purposes of this statute in part as " any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." I know from my training and experience that PMFs fall within that definition. I examined the PMFs involved in this case, described below, and I found each of them to be operable.

6. On March 17, 2022, ATF Agents met with an ATF Confidential Informant, hereinafter "the CI"[1], who provided information on "Person One". The CI informed the agents Person One had a "ghost" gun for sale. The CI informed the agents that Person One sells firearms often and has been doing so for the past few years, and that on numerous occasions, Person One has offered to sell him/her firearms. The CI indicated that Person One has a firearm supplier who builds "ghost" guns[2].

---

[1] The CI has informed agents he/she has known Person One for over ten years and sees him routinely. The CI has multiple felony convictions, including convictions in the Commonwealth of Pennsylvania and a prior federal conviction in the Eastern District of Pennsylvania. The CI is cooperating with ATF in the hopes of receiving consideration on an as-yet uncharged ATF firearms/narcotics investigation. The CI's information has been corroborated through recorded telephone calls, text messages, physical surveillance, telephone records, and multiple controlled and monitored purchases of firearms.

[2] Investigators understood a "ghost" gun to refer to a "Privately Made Firearm" or "PMF". ATF defines a PMF as a firearm completed, assembled, or otherwise produced by a person other than a licensed manufacturer, and without a serial number placed by a licensed manufacturer at the time the firearm was produced.

7. From March 2022 through April 2022, ATF conducted two monitored and controlled purchases of two PMF pistols from Person One in Philadelphia, PA. The two firearms purchased were a 9x19mm PMF pistol for $1,000 and a 9x19mm PMF pistol with eight (8) live rounds of 9x19mm Blazer ammunition for $1,200. Additionally, Person One told the CI that he would be able to sell the CI additional "ghost" guns in the future.

8. On June 7, 2022, the CI informed me that he/she had spoken to Person One on June 5, 2022, and Person One indicated he placed an order to his supplier for two Glock-type "ghost" guns. Person One indicated the two guns would be expensive and that it would take some time to get them because Person One's supplier had to machine them down.

9. On July 20, 2022, the CI informed me that he/she visited Person One's house on the night of July 19, 2022. The CI informed agents Person One provided him/her information on a vehicle that Person One had previously sold to the CI. Person One said that this vehicle was previously owned by Person One's gun supplier. The CI provided me the VIN of this vehicle. I checked PennDOT vehicle records; the records showed that Jason BROWN, with an address of 310 Otter Street Bristol, PA 19007, had previously owned the vehicle.

10. Via subpoena, I have obtained subscriber information and call details records for phone number 215-932-3120, subscribed to in the name of Jason BROWN with a listed address of 310 Otter Street, Bristol, PA. I reviewed call records which show numerous contacts between BROWN's telephone number and Person One's telephone number between January 2021 through September 2022, including contacts around the dates of the PMF controlled purchases.

11. On August 17, 2022, ATF conducted a monitored and recorded meeting between the CI and Person One. During that meeting Person One indicated that he had recently gone to his supplier's house, and the supplier showed Person One nine Glock style pistols and six AR

style firearms. Person One said that these firearms would cost no less than $1,700 each. Person One indicated his supplier was only willing to sell a couple firearms at this time because his supplier can't buy anymore "bottoms" to the firearms. Person One indicated the longer his supplier holds onto the firearms, the higher the prices will be.

12. On August 22, 2022, the CI informed me that Person One called him/her (on August 22, 2022) regarding selling firearms to him/her on August 25, 2022. Person One informed the CI he/she could order whatever firearms he/she wants. The CI and Person One agreed that the CI would purchase a rifle and a pistol for $1,700 each on August 25, 2022. The CI and Person One had an additional phone conversation about the planned transaction later on August 22, 2022. Phone records indicate BROWN's phone number was in contact with Person One immediately after Person One and the CI had that later phone call.

13. On August 23, 2022, I drove by 310 Otter Street, Bristol, PA 19007 and observed a gray Honda Accord bearing PA tag LNE8365 parked out front. PennDOT records indicate this vehicle is registered to Jason BROWN at 310 Otter Street. On numerous occasions between August 23, 2022, through September 22, 2022, via electronic surveillance, I observed BROWN exit and enter through the front door of 310 Otter Street and use the gray Honda Accord.

14. On August 25, 2022, ATF conducted a third monitored and controlled purchase of PMFs at Person One's address in Philadelphia, PA. Call detail records indicate BROWN was in contact with Person One multiple times on August 25, 2022. I have observed video surveillance from 3:32PM on that date, showing the front of 310 Otter Street, Bristol, PA 19007, which showed BROWN depart the front door of 310 Otter Street carrying a long black bag, place it into the gray Honda Accord parked in front of 310 Otter Street, and drive off. At approximately 4:28PM, the CI arrived at Person One's residence, met with Person One inside the residence, and

gave Person One $3,400 as agreed. At approximately 4:31PM, ATF surveillance observed BROWN's Honda Accord drive into a back alley behind Person One's residence. The CI then observed BROWN enter Person One's address through the back door carrying two bags, including the same long black bag I saw BROWN previously put into the Honda Accord. BROWN opened the two bags and displayed three pistols and one rifle to the CI. BROWN explained the differences in the firearms to the CI and indicated when you build firearms, they require a 500-round break in period so the firearms can be "broken in" and run smoothly. BROWN provided the CI one of the 9x19mm PMF pistols and the 5.56x45mm PMF rifle, and the CI departed Person One's house with the guns. The CI subsequently gave the guns to investigators, and informed the investigators that BROWN was willing to sell the two additional pistols as well. At approximately 4:52PM, the CI called Person One and asked if BROWN was still willing to sell the additional two pistols. Person One indicated BROWN was willing to sell them, and that they would also cost $1,700 each. At approximately 6:11PM, the CI returned to Person One's residence and again met with BROWN and Person One. The CI provided Person One with another $3,400 in U.S Government funds. BROWN gave the CI the two 9x19 PMF pistols in return, and the CI left.

15. In sum, the CI informed me the long black bag BROWN carried from the car into Person One's home contained the rifle that he/she purchased from BROWN and Person One. In total, during the transactions on August 25, 2022, the CI purchased three 9x19mm PMF pistols with 5 live rounds of 9x19mm ammunition, one AR-15 style rifle PMF and 10 live rounds of PMC 5.56x45mm ammunition from BROWN and Person One for $6,800.

16. I have reviewed the electronic recordings made during these transactions, and they corroborated the CI's account. On the recordings I observed that BROWN was wearing the

same clothing seen on the video surveillance of him departing 310 Otter Street. I observed BROWN put on gloves before removing the firearms from a bag. I noted that, as BROWN pulled out the firearms from the bag, BROWN asked Person One if he had shown Person One the firearms before, and Person One said that he had seen them before. I heard the CI ask BROWN if he had any more firearms, and heard BROWN indicate there would be one or two more, but they are not here yet and that they would be smaller. I saw BROWN show the firearms to the CI and heard BROWN discuss the differences in them. BROWN allowed the CI to pick out which firearms he/she wanted.

17. On September 27, 2022, the CI informed investigators that on September 25, 2022, Person One met with the CI at a supermarket in Philadelphia, PA. During this meeting, Person One indicated that his firearms supplier had a Glock 17 for sale for $1,700. I know from my training and experience that a Glock 17 refers to a semiautomatic 9mm pistol. Person One told the CI that his firearms supplier wants to hold onto the rest of the firearms because the prices would be going up the longer his firearms supplier holds onto them. The CI arranged to purchase the Glock firearm on September 29, 2022.

18. I reviewed electronic surveillance from September 28, 2022, showing the front of 310 Otter Street, Bristol, PA and 7013 Walker Street, Philadelphia, PA. The video evidence showed that at approximately 4:09PM, BROWN exited the front door of 310 Otter Street, Bristol, PA and entered the driver's seat of a gray Honda Accord. BROWN then departed the area in this vehicle. At approximately 4:35PM, BROWN arrived at Person One's residence in Philadelphia, PA in the same Honda Accord. BROWN exited this vehicle and walked towards the front door of 7013 Walker Street. At approximately 5:29PM, BROWN walked down the front steps to the front of 7013 Walker Street and depart in the gray Honda Accord. At

approximately, 7:01PM, BROWN arrived back at 310 Otter Street in the gray Honda Accord and entered the front door.

19. On September 29, 2022, ATF conducted a monitored and controlled purchase of one Polymer 80 PMF 9x19mm semiautomatic pistol from Person One at Person One's residence. During this controlled purchase, Person One indicated the prices were going to go up for the firearms in the future. Person One and the CI discussed Person One's source of firearms. Person One indicated the reason his firearms supplier is holding onto "them jawns" is because you can no longer buy it like he was buying it, that's done and that he can't even get them sent, it's "illegal".

20. On November 2, 2022, I observed video surveillance from November 2 showing the front of 310 Otter Street, Bristol, PA 19007, which showed BROWN depart the front door of 310 Otter Street carrying a black bag. At approximately 6:12PM, BROWN is then observed getting into the driver's seat of a gray Honda Accord. A female is also seen departing through the front door of the residence and getting into the passenger's seat of the vehicle. I observed video surveillance showing the front of Person One's address and observed BROWN and this same female arrive there in the Honda Accord at around 6:48PM. BROWN and the female exit the vehicle and walk up the front steps of Person One's address. BROWN is carrying a large bag. At approximately 7:59PM, BROWN and the female walk down the front steps at Person One's address. BROWN is no longer in possession of a bag.

21. On November 3, 2022, ATF conducted a monitored and controlled purchase of one Polymer 80 PMF 9x19mm pistol and one Polymer 80 PMF 5.56x45mm AR-style pistol from BROWN and Person One at Person One's address. At approximately 4:06PM, investigators observed BROWN via video surveillance arrive at Person One's address in the Honda Accord.

Investigators then observed BROWN walk up the front steps of Person One's address with a black bag. At approximately 4:27PM, the CI arrived at Person One's residence and met with Person One and BROWN inside of the residence. The CI provided $3,400 in U.S Government fund to Person One. BROWN provided one Polymer 80 PMF 9x19mm pistol and one Polymer 80 PMF 5.56x45mm AR-style pistol to the CI as well as pistol sights for one of the Polymer 80 PMF pistols that BROWN sold to the CI on August 25, 2022.

22. Following each of these controlled purchases, I function checked the firearms for operability and found each of them to be operable.

23. A Federal Firearms License ("FFL"), issued by ATF, is required to engage in the business of dealing in firearms. ATF records show BROWN does not possess such a license.

## CONCLUSION

Based on the above information, and through my experience and training as an ATF Special Agent, I submit there is probable cause to arrest Jason BROWN for violating Title 18 United States Code Sections 922(a)(1)(a) and 2 (engaging in the business of dealing in and manufacturing firearms without a license, aiding and abetting.)

Respectfully submitted,

/s Ryan Wills
_____
Ryan Wills
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me
on November 15, 2022

/s David R. Strawbridge
_____
Honorable David R. Strawbridge
United States Magistrate Judge